UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VINCENT LEONE,                                         )
                                                       )
                  Plaintiff,                        )        **COMPLAINT**
                                                       )
    -against-                                         )        **JURY TRIAL DEMANDED**
                                                       )
THE CITY OF NEW YORK; POLICE OFFICER                   )
WILLIAM HANLON, Shield No. 23080; POLICE               )
OFFICER CHRISTOPHER RIVERA, Shield No.                 )
904; POLICE OFFICER "FNU" [First Name                  )
Unknown] POWELL; POLICE OFFICER                        )
ROBERT DREEBEN, Shield No. 15877; POLICE               )
SERGEANT JOSEPH ROSENBERGER, Shield                    )
No. 4941(retired); POLICE LIEUTENANT                   )
MATTHEW MURPHY; JOHN DOES; and                         )
RICHARD ROES,                                          )
                                                       )
                  Defendants.                       )
------------------------------------------------------------X

## **PRELIMINARY STATEMENT**

1.    This is a civil rights action in which the plaintiff VINCENT LEONE seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2. This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

5. Plaintiff VINCENT LEONE was at all times relevant herein a resident of the State of New York.

6. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

7. Defendants POLICE OFFICER WILLIAM HANLON, POLICE OFFICER

CHRISTOPHER RIVERA, POLICE OFFICER "FNU" [First Name Unknown] POWELL, POLICE OFFICER ROBERT DREEBEN, POLICE SERGEANT JOSEPH ROSENBERGER (retired), POLICE LIEUTENANT MATTHEW MURPHY and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants POLICE OFFICER WILLIAM HANLON, POLICE OFFICER CHRISTOPHER RIVERA, POLICE OFFICER "FNU" [First Name Unknown] POWELL, POLICE OFFICER ROBERT DREEBEN, POLICE SERGEANT JOSEPH ROSENBERGER (retired), POLICE LIEUTENANT MATTHEW MURPHY and JOHN DOES are sued individually and in their official capacity.

8.     Defendants POLICE SERGEANT JOSEPH ROSENBERGER (retired), POLICE LIEUTENANT MATTHEW MURPHY and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants are and were at all times relevant herein acting

under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants POLICE SERGEANT JOSEPH ROSENBERGER (retired), POLICE LIEUTENANT MATTHEW MURPHY and RICHARD ROES are sued individually and in their official capacity.

## STATEMENT OF FACTS

9. On March 13, 2013, at approximately 1:45 a.m., Plaintiff VINCENT LEONE was driving by himself along Interstate 87 in Bronx County in the City of New York.

10. An unmarked car – driven on information and belief by Defendants POLICE OFFICER WILLIAM HANLON and POLICE OFFICER CHRISTOPHER RIVERA - pulled up behind him with red and white lights flashing from within its windshield, but the lights were suspicious to Plaintiff and he was concerned that the people in the car might not really be police officers.

11. Plaintiff was also suspicious of the people seeking to pull him over because he had not violated any of the vehicle and traffic, or other, laws, and there was no lawful reason for a police officer to be seeking to pull him over.

12. Plaintiff then put his car's hazard lights on, drove very slowly (approximately 10-15 miles per hour) in the right lane, and called 911 in order to check if the people trying to pull him over were really police officers.

4

13. The 911 operator informed Plaintiff that there were no police units who were attempting to pull him over.

14. Defendants HANLON and RIVERA agressively told Plaintiff, over some sort of public address system from their car, in sum and substance, to pull the fuck over.

15. The profane and aggressive way in which Defendants HANLON and RIVERA were addressing Plaintiff with their public address system only heightened Plaintiff's suspicion that they might not really be police officers.

16. Defendants HANLON and RIVERA then, without cause or justification, rammed Plaintiff's car multiple times, threatened to push Plaintiff off of the road if Plaintiff did not stop, and drove in front of Plaintiff's car and forced Plaintiff's car off of the road at the Moshulu Parkway exit.

17. At no point did Defendants HANLON and RIVERA state over their public address system that they were police officers.

18. Once off the highway at the Moshulu Parkway exit Defendants HANLON and RIVERA pulled in front of Plaintiff's car and blocked Plaintiff's car from continuing forward.

19. Defendants HANLON and RIVERA exited their car, wearing police uniforms, and approached Plaintiff's car with their guns drawn.

20. One of these Defendants – on information and belief Defendant RIVERA – pressed his loaded firearm to Plaintiff's temple, and began to curse at Plaintiff and say other aggressive things to Plaintiff.

21. The other of these Defendants – on information and belief Defendant HANLON – was pointing his gun at Plaintiff's head.

22. Defendant RIVERA removed Plaintiff's seatbelt, pulled Plaintiff from his car, threw Plaintiff to the ground in the active roadway, and pulled Plaintiff violently to the side of the road, including pushing Plaintiff into a guardrail, continuing to curse at Plaintiff and say aggressive things to him.

23. Among the things Defendant RIVERA told Plaintiff while he was cursing at Plaintiff was that Plaintiff was not in New Jersey (Plaintiff's car had New Jersey license plates), he was in New York, and Defendant RIVERA kept asking Plaintiff if Plaintiff was drinking or on drugs (even though there was no indication whatsoever that Plaintiff was under the influence of any alcohol or drugs).

24. Plaintiff was not under the influence of any alcohol or drugs.

25. Defendant HANLON got into Plaintiff's car, and drove it to a position in front of the unmarked police car.

26. Defendant HANLON conducted an unlawful search of the interior of Plaintiff's vehicle.

27. Defendant HANLON, after conducting the unlawful search of the interior of Plaintiff's vehicle, stated, in sum and substance, "there nothing fucking in there" and then began aggressively questioning Plaintiff, insisting Plaintiff had something in there and asking where it was (whatever it may have been).

28. Defendant RIVERA placed Plaintiff in handcuffs without any legal justification for doing so.

29. Defendant RIVERA continued to manhandle Plaintiff even after he was handcuffed.

30. Defendant HANLON pushed a breathalyzer device into Plaintiff's mouth and told Plaintiff, in sum and substance, "blow you mother fucker."

31. After forcibly administering the breathalyzer to Plaintiff, Defendant HANLON shook his head at Defendant RIVERA, to indicate that the breathalyzer results were negative, and indicated that Plaintiff was not under the influence of alcohol.

32. Defendant RIVERA kept cursing and insisting that Plaintiff was on some sort of drug, and Defendant RIVERA then also illegally searched through the interior of Plaintiff's car.

33. As a result of the illegal searches of Plaintiff's car, Plaintiff's possessions were strewn about the inside of his car by Defendants HANLON and RIVERA.

34. Plaintiff, terrified, explained to Defendants HANLON and RIVERA that he had called 911 and that he wanted other officers to come to the scene.

35. Defendants HANLON and RIVERA said, in sum and substance, "fuck what you did," and "fuck other officers," and told Plaintiff to "get the fuck out of here," and without any explanation whatsoever fled the scene without issuing any summons or alerting any backup, and without even running Plaintiff's license and registration.

36. Defendants HANLON and RIVERA had never even asked for, or looked at, Plaintiff's license and registration.

37. Plaintiff was able to make a mental note of the license plate number of Defendants HANLON's and RIVERA's unmarked police car before they fled the scene.

38. At no point did Defendants HANLON or RIVERA ever explain to Plaintiff why they wanted him to pull over, or why they did what they did to him.

39. Plaintiff at no point offered any physical resistance of any sort to Defendants

HANLON and RIVERA, and there was no legitimate justification for the violent manner in which they treated Plaintiff.

40. About 15 to 20 minutes after Defendants HANLON and RIVERA fled the scene a number of other police cars arrived at the scene in response to Plaintiff's 911 call.

41. Plaintiff was told to follow these officers to the NYPD 50th precinct, where he would be interviewed about what had just happened to him.

42. Once at the precinct, JOHN DOES members of the NYPD – on information and belief including POLICE OFFICER "FNU" [First Name Unknown] POWELL[1], POLICE OFFICER ROBERT DREEBEN, POLICE SERGEANT JOSEPH ROSENBERGER (retired), and POLICE LIEUTENANT MATTHEW MURPHY - told Plaintiff that he was not free to leave, took his driver's license and registration, and held him against his will, during which time he was interviewed, from approximately 2:00 a.m. until approximately 11:00 a.m., when he was released from their custody.

43. Plaintiff has never been contacted by the NYPD to provide him with any information as to why this happened to him, or to inform his of whether any of the members of service involved were disciplined in any way.

---

1 POLICE OFFICER "FNU" [First Name Unknown] POWELL's name appears on an Incident Information Slip (annexed hereto as **Exhibit 1**) that was provided to Plaintiff at the 50th Precinct. The NYPD was not able to provide further identifying information concerning this Officer's identity based upon the limited information available.

## **FIRST CLAIM**

## **DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

44. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

45. By their conduct and actions in stopping plaintiff, damaging plaintiff's property, seizing plaintiff, searching plaintiff's car, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, trespassing upon plaintiff and his property, violating rights to due process of plaintiff, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, defendants POLICE OFFICER WILLIAM HANLON, POLICE OFFICER CHRISTOPHER RIVERA, POLICE OFFICER "FNU" [First Name Unknown] POWELL, POLICE OFFICER ROBERT DREEBEN, JOHN DOE SERGEANT, POLICE LIEUTENANT MATTHEW MURPHY, JOHN DOES and/or RICHARD ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

46. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

47. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

48. By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants JOHN DOE SERGEANT, POLICE LIEUTENANT MATTHEW MURPHY and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

49. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

50. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

51. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

52. At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

53. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

54. At all times material to this complaint, the defendant CITY OF NEW YORK has been on continuing notice that officers and commanders of the New York City Police Department tolerate and encourage police to lie, and to otherwise act, to cover up the wrongful conduct of themselves and their fellow officers.  This can be shown with reference to the following cases:

    a. Ariza v. City of New York, 1996 U.S. Dist. LEXIS 20250, 14 (E.D.N.Y. March 7, 1996) ["The [municipal] defendants concede, however, that the code exists to prevent other officers from reporting corruption or dishonesty by fellow officers…. [t]he principle behind the 'blue wall of silence' is that officers will suffer recrimination for breaking ranks and subjecting police conduct to public scrutiny."]

b. White-Ruiz v. City of New York, 1996 U.S. Dist. LEXIS 15571, 23 (S.D.N.Y. October 21, 1996)  ["[P]laintiff offers sufficient evidence to permit a reasonable trier of fact to infer that the 'blue wall of silence' constitutes a custom or usage of the Department"]

c. United States v. Rosario, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ["[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997."]

d. Barry v. New York City Police Dep't, 2004 U.S. Dist. LEXIS 5951, 40-41 (S.D.N.Y. April 7, 2004) ["[P]laintiff's witnesses speak from firsthand experience about the blue wall of silence…. Plaintiff complains of acts that are of the precise nature as the customs and practices described in the [Mollen Commission] Report."

e. Griffin v. City of New York et al., 10 Civ. 01824 (E.D.N.Y. 2010) [Plaintiff detective sues on pattern of retaliation following his reporting fellow detective to Internal Affairs, fellow officers cover for detective accused of misconduct, *see*, e.g., at ¶35: "Internal Affairs conducted its investigation into [Detective] Plaintiff's allegations [of misconduct] against [Detective] McCarthy.  All of the material witnesses failed to cooperate with the investigation by being less than truthful…. [a]s a result, the allegations made by Plaintiff against McCarthy were dismissed as unsubstantiated."]

55. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
            March 11, 2016

                                                     /S/ Jeffrey A. Rothman
                                              JEFFREY A. ROTHMAN, Esq.
                                              315 Broadway, Suite 200
                                              New York, New York 10007
                                              (212) 227-2980

                                              Attorney for Plaintiff